EDOK Criminal Complaint (Revised 6/13)

# United States District Court

## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>KELLY VON MORCK,<br><br>*Defendant.* | **CRIMINAL COMPLAINT**<br><br>**Case No.**  25-MJ-232-JAR |

I, Rebecca Davison, the undersigned complainant, state that the following is true to the best of my knowledge and belief.

On or about October 20, 2024 through June 26, 2025, in the Eastern District of Oklahoma, Kelly Von Morck**,** committed the crimes of User of controlled substance in possession of firearms, in violation of Title 18, United States Code, Section 922(g)(3) and 924(a)(8), Storing explosives in a manner not in conformity with federal regulations, in violation of Title 18, United States Code, Section 842(j), User of controlled substances in possession of explosives, in violation Title 18,  United States Code, Section 842(i)(3), and Possession of an NFA weapon not registered to them in the NFRTR, in violation of Title 26, United States Code, Section 5861(d) and Unlawfully engaging the business of importing, manufacturing, or dealing in explosive materials without a license, in violation Title 18, United States Code, Section 842(a)(1).

I further state that I am a Special Agent with the Bureau of Alcohol, Tabaco. Firearms, and Explosives, and that this complaint is based on the following facts:

(See attached Affidavit of Rebecca Davison, which is attached hereto and made a part hereof by reference.)

☒     Continued on the attached sheet.

_____
Rebecca Davison
Special Agent
Bureau of Alcohol, Tabacco, Firearms, and
Explosives

Sworn to on June 26, 2025

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A CRIMINAL COMPLAINT

I, Rebecca Davison, being duly sworn, does depose and state the following:

### AGENT BACKGROUND AND INTRODUCTION

1.      I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) within the meaning of 18 U.S.C. § 3051, and as such, am an officer of the United States who is authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.  I have been employed by ATF since December 2020. In 2021, I completed the Criminal Investigator Training Program required by the ATF to be an ATF criminal investigator.  I also completed the Special Agent Basic Training Academy required by ATF for all special agents employed by ATF.  In connection with my official duties as an ATF Special Agent, I investigate criminal violations of federal firearms laws, federal explosives laws and federal narcotics laws.  I have further worked alongside other experienced investigators in relation to firearms, explosives, and narcotics investigations.

2.      This affidavit is made for the limited purpose of establishing probable cause in support of a criminal complaint alleging that Kelly Von MORCK, hereafter referred to as MORCK did commit the following violations:  Title 18, United States Code, Section 922(g)(3), for a person who is an abuser of a controlled substance to possess firearms and ammunition, Title 18, United States Code, Section 842(i)(3), for a person who is an abuser of a controlled substance to possess explosives, Title 26, United States Code, Section 5861(d), for a person to possess weapons not registered to them in the NFRTR, Title 18, United States Code, 842(j), storing explosives in a manner not in conformity with federal regulations, and Title 18, United States Code, Section 842(a)(1), for it to be unlawful for any person to engage in the business of importing, manufacturing, or dealing in explosive materials without a license issued under this chapter.

3.    This affidavit contains only the information that I believe is necessary to support probable cause for this application. It is not intended to include every fact or matter observed by me or known by law enforcement. The information provided is based on my personal knowledge and observations during this investigation, information conveyed to me by other law enforcement officials, and my review of records, documents, and physical evidence obtained during the investigation.

## FACTS SUPPORTING PROBABLE CAUSE

4.    On October 20, 2024, I was notified by Pittsburg County Sheriff's Office (PCSO) of an explosion at the residence of Kelly Von MORCK located at 800 Linn Street, Hartshorne, Oklahoma 74547, within the Eastern District of Oklahoma, caused by Kelly MORCK. They advised that MORCK was life flighted to Tulsa, Oklahoma after receiving third-degree burns and multiple lacerations to his body when an explosion occurred on the front porch of the residence. ATF along with PCSO, Oklahoma Highway Patrol (OHP) Bomb Squad, Hartshorne Fire Department (HFD), and Hartshorne Police Department (HPD) responded.

5.    When I arrived at the residence, I spoke with MORCK'S wife, Zoelyn Copeland. She stated:

   a) she was married to MORCK for four years and they lived at the residence;

   b) MORCK placed an old dishwasher in a field on the property and mixed "Tannerite" to blow up the dishwasher;

   c) In my training and experience, Tannerite is a binary explosive that consists of an oxidizer and a fuel, such as ammonium nitrate and a fuel generally a proprietary blend which usually includes aluminum, respectively. Tannerite is commercially sold with the two components separated and are not considered an explosive. However, once the

two components are combined, the resulting mixture is then an explosive material that is regulated by the ATF.

d) MORCK had blown up other appliances in the past utilizing "Tannerite."

e) MORCK usually used a stick or a drill when he mixed the chemical compounds to create the "Tannerite";

f) On this day, he used the drill with a long drill bit that was on the front porch;

g) She heard a loud "boom" and a lot of screaming;

h) MORCK opened the front door to get her attention;

i) She then grabbed a fire extinguisher to put out the flames in the grass and MORCK used the water hose on the rear of the house to spray himself;

j) She noticed that MORCK'S facial hair was singed, and the skin was melting off his hands;

k) She saw that he had lacerations on his leg, near his artery;

l) She was unsure what type of chemicals MORCK used;

m) When asked about MORCK'S criminal history, she stated he was in trouble for selling weed in college, but the sentence was deferred;

n) She said MORCK was able to purchase firearms and confirmed there was both guns and ammunition inside of the residence;

o) She also said there were additional unknown chemicals inside of the residence, such as in the garage and living room;

p) MORCK also had chemicals in the shop outbuilding;

q) She said he purchased the chemicals online and may have boxes from the shipments in a burn pile on the property;

r) MORCK smoked marijuana daily to help him sleep and that he used to own a marijuana cultivating business. She said he still had the marijuana plants because MORCK used them for experiments.

6.     ATF Special Agents and I accompanied Z.C. while she was allowed to enter the residence to gather clothing and necessities to leave the residence. During this short moment inside of the residence with Copeland, I observed a firearm, marijuana, marijuana smoking devices, and multiple chemicals in various containers in plain view.

7.     I examined the exterior of the residence, shop, and outbuildings as part of the investigation into the explosion. I observed two appliances at the edge of the grass field, several feet apart. One of the appliances was a dishwasher with several bullet holes, a bulge, and a large crack in it. The door of the dishwasher was not intact but had several pieces of duct tape. The damage to the dishwasher were consistent with being caused by gunfire and/or an explosion.

8.     In the same field where the appliances were, I observed two corded, large stage style, lights facing towards the appliances. In my training and experience, this is consistent with someone who films themselves or others shooting at targets, such as large appliances. Oftentimes, people also record themselves blowing up materials and large devices such as appliances. I also noted there were several surveillance cameras throughout the property that could capture the receipt and possession of explosives materials. Behind the grey in color workshop were approximately six large marijuana plants.

9.     At the scene of the explosion on the front porch investigators observed a power drill with a long bit installed, a dismantled fire extinguisher body with a funnel placed in the top, a scale, a burned cell phone, several silver colored bags of chemical components, and propane bottles. The glass on the front door was shattered. One of the chemical bags had "Sodium Nitrate"

written on the outside. Samples of the burnt residue, ammonium nitrate, and sodium nitrate were collected for further examination, as well as the fire extinguisher. Photos of the explosion scene are below:





Law enforcement noticed that the fire extinguisher at the explosion on the porch had the nozzle/handle removed and a funnel placed in the top of it. This indicated that the extinguisher

was going to be used to hold the explosive mixture MORCK was creating. Upon collecting the evidence, the extinguisher nozzle/handle was placed back into the top of the red extinguisher body and placed in an evidence bag. The extinguisher was later sent to an ATF laboratory for an examination where it was reviewed by an ATF Destructive Device Examiner. An x-ray of the extinguisher nozzle/handle revealed a live detonator inside with a hobby fuse attached. Inside of the detonator was suspected homemade explosive. The nozzle was crimped at the end and had electrical tape at the top near the handle. The examiner's report is currently pending final review. (See paragraph 33).



Fire extinguisher body with funnel placed in opening.




Top view of extinguisher. Hole where funnel was inserted.



Extinguisher handle w/ crimped nozzle.







10.    I watched the body worn camera video from a responding HPD officer who was one of the first responders on scene. The video shows:

a)    MORCK stating that he was mixing up "Tannerite".

b)    COPELAND saying the "Tannerite" was on the front porch where the flames were.

c)    MORCK spraying himself with the water hose and with injuries to his body, including skin gone from his hands and leg lacerations.

11.    I learned that MORCK was previously prosecuted for state felonies in Texas in 2012 for controlled substance and marijuana possession. He received a deferred sentence for all three charges (Denton County cases F-2012-1048A, 1049A, and 1050A).

12.    On October 21, 2024, a federal search warrant was granted for 800 Linn Street, Hartshorne, Oklahoma. The scene was secured and maintained by local law enforcement through the night on October 20, 2024, until the search warrant was executed. During the execution of the search warrant, a very large homemade explosive (HME) laboratory operation and materials suspected to be synthesized on site were located. Powdered chemical precursors which are used to manufacture explosives, Picric Acid, ETN, and other primary high explosives were collected and sampled. There were three (3) separate locations involved in the HME laboratory operation: the residence's attached garage, the living room of the residence, and the detached workshop. Photos of the labs are below:

Garage:






Living room:





Workshop:









Additionally, multiple suspected destructive devices, or improvised explosive devices, were located and collected. Agents also found three firearms, ammunition, a quantity of narcotics to include methamphetamine, marijuana, LSD, MDMA, steroids, and psychedelic mushrooms. Due to the bulk powders and precursors, agents conducted an emergency disposal at the scene without incident. A book titled "Improvised Munitions" was in the living room near the HME laboratory. MORCK's cell phone was burned/melted from the explosion and was collected from the front porch. Additionally, an HP Envy computer with a removeable memory card was collected from the upstairs loft and an HP Probook was taken from the living room near the HME laboratory.

13.     On October 23, 2024, ATF attempted to interview MORCK at Hillcrest Hospital in Tulsa, Oklahoma. MORCK was read his *Miranda* rights, and he stated he wished to have an attorney present. The interview was terminated.

14.     Later on, October 23, 2024, investigators spoke to MORCK's wife, COPELAND, outside of the hospital room. She stated she didn't have any questions about the search warrant. However, she inquired about the firearms taken. She stated the .38 special caliber revolver belonged to her and the rifle found in the living room belonged to MORCK.

15.     On November 19, 2024, I received subpoenas for various chemical companies for products located at MORCK's residence. Fireworks Cookbook company supplied four (4) invoices dated July 7, 2023, August 7, 2023, September 1, 2023, and September 16, 2023. The Billing and shipping address on each of the orders was to "Kelly Morck" at 800 Linn St., Harshorne, OK, 74547. MORCK placed these orders via the website www.fireworkscookbook.com. The orders were shipped from Georgia. The orders were for various chemical components commonly used to manufacture explosives:

| Product | Quantity | Price |
|---|---|---|
| Ammonium Nitrate Porous Prills | 6 | $15.00 |
| Barium Nitrate | 2 | $12.00 |
| Graphite Powder | 1 | $8.00 |
| Potassium Chlorate | 2 | $15.00 |
| Potassium Perchlorate | 2 | $17.50 |
| | Subtotal: | $67.50 |

| Product | Quantity | Price |
|---|---|---|
| Aluminum German Flake 10890 Eckart | 1 | $12.00 |
| Copper Oxide II Black | 1 | $13.00 |
| Dextrin | 1 | $3.00 |
| | Subtotal: | $28.00 |

| Product | Quantity | Price |
|---|---|---|
| Aluminum Atomized Spherical<br>Particle Size: -325 mesh | 1 | $7.25 |
| Ammonium Nitrate Porous Prills | 6 | $15.00 |
| Hexamine | 3 | $18.00 |
| Magnalium MG/AL<br>Particle Size: -325 Mesh | 1 | $14.00 |
| Sodium Bentonite Clay (Granulated) | 5 | $5.00 |
| Strontium Nitrate | 2 | $10.00 |
| | Subtotal: | $69.25 |

| Product | Quantity | Price |
|---|---|---|
| Aluminum German Dark Pyro (5413H Super) | 1 | $19.50 |
| Aluminum German Flake 10890 Eckart | 1 | $14.00 |
| Aluminum Indian Blackhead Dark Pyro | 1 | $11.50 |
| Aluminum, Flake (Firefly) K-102 | 1 | $8.00 |
| Charcoal Eastern Red Cedar Ground | 1 | $11.00 |
| Magnalium MG/AL<br>Particle Size: -50 Mesh | 1 | $14.00 |
| Phenolic Resin Milled | 2 | $16.00 |
| Titanium Sponge -20+80 mesh | 1 | $12.50 |
| | Subtotal: | $106.50 |

I know based on my training and experience and through consultation with Resident Agent in Charge Ashley Stephens, who is also an ATF Certified Explosives Specialist (CES) that: Aluminum German Dark Pyro (5413H Super) is an aluminum powder that is commonly used as a

fuel in pyrotechnics; Potassium Perchlorate is an oxidizer and when mixed with a fuel such as Aluminum German Dark Pyro (5413H Super) the composition of those two elements creates what is commonly identified as "flash powder"; Flash powder is defined as an explosive material intended to produce an audible report and a flash of light when ignited which includes but is not limited to oxidizers such as Potassium Chlorate or Potassium Perchlorate, and fuels such as sulfur or aluminum powder;  Flash powder is classified as a "high explosive" and required to be stored in either a Type 1, 2, or 3 explosive magazine; and that flash powder is commonly used as a "filler" in illegal explosive devices.

16.    On December 6, 2024, I received order summaries from Carolina Chemical LLC. I confirmed with the company that the orders were placed online via their website, www.carolinachemical.com. I obtained the shipment dates from the company for three (3) orders: March 18, 2024, September 16, 2024, and December 5, 2024. The shipping address was to Kelly MORCK, Abalone Grow Supply LLC, at 800 Linn St., Harshorne, OK, 74547 and the user was abalonegrowsupply@gmail.com. The orders were shipped from North Carolina.

March 18, 2024, order:

## Order Summary Report

Kelly Morck
ABALONE GROW SUPPLY, LLC
800 LINN ST
HARTSHORNE, OK 74547-2016 US

Date Paid:
Amount Paid: $131.36
Record #: 3183
Store: Carolina Chemical

Buyer Comments          Internal Notes

| Item ID | Title | Unit Price | Qty | Ext Price |
|---------|-------|-----------|-----|-----------|
| 0016-1L | Cyclohexylamine ≥99.9%- 1L<br>Size: 1L | $38.00 | 1 | $38.00 |
| 0022-500G | Paraformaldehyde Prills 91-93%- 500G<br>Size: 500G | $20.00 | 1 | $20.00 |
| 0046-100G | Lidocaine Hydrochloride Powder ≥99%- 100G<br>Size: 100G | $30.00 | 1 | $30.00 |
| 0057-100G | Benzocaine Powder ≥99.0%- 100G<br>Size: 100G | $24.75 | 1 | $24.75 |

September 16, 2024, order:

## Order Summary Report

| | | Date Paid: | | | | Buyer Comments | | Internal Notes | |
|---|---|---|---|---|---|---|---|---|---|
| Kelly Morck ABALONE GROW SUPPLY, LLC 800 LINN ST HARTSHORNE, OK 74547-2016 US | | Amount Paid: $124.18 Record #: 5223 Store: Carolina Chemical | | | | | | | |

| Item ID | Title | Unit Price | Qty | Ext Price |
|---|---|---|---|---|
| 0025-100G | 2,5-Dimethoxybenzaldehyde ≥99% - 100G Size: 100G | $49.00 | 1 | $49.00 |
| 0050-1L | Dimethylformamide DMF, Reagent ACS, ≥99.8% - 1L Size: 1L | $40.00 | 1 | $40.00 |
| 0068-950ML | Hydrogen Peroxide 35% - 950ML Size: 950ML | $16.50 | 1 | $16.50 |

December 5, 2024, order:

## Order Summary Report

| | | Date Paid: 12/5/2024 | | | | Buyer Comments | | Internal Notes | |
|---|---|---|---|---|---|---|---|---|---|
| Kelly Morck ABALONE GROW SUPPLY, LLC 800 LINN ST HARTSHORNE, OK 74547-2016 US | | Amount Paid: $132.78 Record #: 6372 Store: Carolina Chemical | | | | | | | |

| Item ID | Title | Unit Price | Qty | Ext Price |
|---|---|---|---|---|
| 0018-1L | Toluene ≥99.0% - 1L Size: 1L | $20.50 | 1 | $20.50 |
| 0025-25G | 2,5-Dimethoxybenzaldehyde ≥99% - 25G Size: 25G | $26.00 | 1 | $26.00 |
| 0037-500ML | Tetrahydrofuran, Anhydrous, Reagent ACS, Contains 250 ppm BHT as Inhibitor - 500ML Size: 500ML | $27.00 | 1 | $27.00 |
| 0049-950ML | Formaldehyde Formalin 37% - 950ML Size: 950ML | $14.00 | 1 | $14.00 |
| 0054-1L | Chloroform, Reagent ACS, ≥99.8% - 1L Size: 1L | $26.00 | 1 | $26.00 |

On May 1, 2025, I received additional subpoenas for the previous chemical companies that MORCK ordered products from according to records previously obtained. Alpha Chemicals provided two orders dated December 31, 2024, and March 25, 2025, which were ordered by Kelly MORCK and shipped to 800 Linn St., Hartshorne, OK 74547.

December 31, 2024, order:

| Qty. | Name | Product ID | Price | Total |
|---|---|---|---|---|
| 1 | 1 Pound - Copper Sulfate Crystals | 1CuSO4Crystals | 4.50 | $ 4.50 |
| 1 | 5 Pounds - Copper Sulfate Powder | 5CuSO4Powder | 16.00 | $ 16.00 |
| 1 | 1 Pound - Zinc Sulfate Powder | 1ZnSO4 | 3.50 | $ 3.50 |
| 1 | 5 Pounds Sulfur Powder | 5Sulfur | 8.00 | $ 8.00 |
| 1 | 1 Pound - Manganese Sulfate Powder | 1MnSO4 | 3.49 | $ 3.49 |
| 1 | 1 Pound - Potassium Sulfate (Sulfate of Potash) | 1SOP | 3.50 | $ 3.50 |
| 1 | 1 Pound - Ammonium Chloride | 1-NH4Cl | 3.50 | $ 3.50 |
| 1 | 2 Pounds - Ammonium Sulfate | 2-(NH4)2SO4 | 4.99 | $ 4.99 |
| | | | **Sub Total** | **$ 47.48** |
| | | | Shipping / Handling | $ 14.75 |
| | | | **Total** | **$ 62.23** |

| Order Tracking Information | Order Notes |
|---|---|
| Shipper: UPS Ground | |
| Ship Date: 12/31/2024 | |
| Tracking Number: 1ZT26T600399605347 | |

March 25, 2025, order:

| Qty. | Name | Product ID | Price | Total |
|---|---|---|---|---|
| 1 | 2 Pound Aluminum Powder - 30 Micron | 2al30 | 21.00 | $ 21.00 |
| 1 | 8 Ounces - Copper Oxide | 8ozCuO | 8.50 | $ 8.50 |
| 1 | 2 Pounds - Urea | 2-Urea | 5.00 | $ 5.00 |
| | | | **Sub Total** | **$ 34.50** |
| | | | Shipping / Handling | $ 10.50 |
| | | | **Total** | **$ 45.00** |

| Order Tracking Information | Order Notes |
|---|---|
| Shipper: UPS Ground | |
| Ship Date: 3/25/2025 | |
| Tracking Number: 1ZW3I2F60393310895 | |

On June 13, 2025, I was notified by Alpha Chemicals that MORCK attempted to make another purchase of chemicals. Due to the previous subpoena, Alpha Chemicals was concerned about the order. On June 17, 2025, they notified me that the order would not be fulfilled at that time out of an abundance of caution. The order placed by MORCK is below:

| Qty. | Name | Product ID | Price | Total |
|---|---|---|---|---|
| 1 | 1 Pound - Black Iron Oxide | 1Fe | 2.50 | $ 2.50 |
| 1 | 1 Pound - Urea | 1-Urea | 3.00 | $ 3.00 |
| 1 | 5 Pounds - Ammonium Chloride | 5-NH4Cl | 13.00 | $ 13.00 |
| 1 | 2 Pounds - Potassium Sulfate (Sulfate of Potash) | 2SOP | 5.50 | $ 5.50 |
| | | **Sub Total** | | **$ 24.00** |
| | | Shipping / Handling | | $ 14.75 |
| | | **Total** | | **$ 38.75** |

17.     On May 7, 2025, Carolina Chemical provided one (1) additional order placed by MORCK on March that was shipped to 800 Linn St., Hartshorne, OK 74547. According to the Fedex Tracking, the shipment was received by MORCK on March 22, 2024. The order is below:



18.     Carolina Chemicals also provided two (2) orders placed by MORCK that were cancelled after the commencement of the ATF investigation into MORCK. The orders are below: December 5, 2024, order:

| | Item ID | Title | Unit Price | Qty | Ext Price |
|---|---|---|---|---|---|
| | 0018-1L | Toluene ≥99.0%- 1L<br>Size: 1L | $20.50 | 1 | $20.50 |
| | 0025-25G | 2,5-Dimethoxybenzaldehyde ≥99%- 25G<br>Size: 25G | $26.00 | 1 | $26.00 |
| | 0037-500ML | Tetrahydrofuran, Anhydrous, Reagent ACS, Contains 250 ppm BHT as Inhibitor - 500ML<br>Size: 500ML | $27.00 | 1 | $27.00 |
| | 0049-950ML | Formaldehyde Formalin 37%- 950ML<br>Size: 950ML | $14.00 | 1 | $14.00 |
| | 0054-1L | Chloroform, Reagent ACS, ≥99.8%- 1L<br>Size: 1L | $26.00 | 1 | $26.00 |

Kelly Morck
ABALONE GROW SUPPLY, LLC
800 LINN ST
HARTSHORNE, OK 74547-2016 US

Date Paid: 12/5/2024
Amount Paid: $132.78
Record #: 6372
Store: Carolina Chemical

Buyer Comments

Internal Notes

April 7, 2025, order:

Kelly Morck
ABALONE GROW SUPPLY, LLC
800 LINN ST
HARTSHORNE, OK 74547-2016 US

Date Paid: 4/7/2025
Amount Paid: $215.18
Record #: 8345
Store: Carolina Chemical

Buyer Comments

Internal Notes
*DO NOT SHIP THIS ORDER. WAIT ON ATF TO RESPOND*

| | Item ID | Title | Unit Price | Qty | Ext Price |
|---|---|---|---|---|---|
| | | Hazmat Fee | $18.90 | 1 | $18.90 |
| | 0029-250G | Sodium Metal, ≥99.8%- 250G<br>Size: 250G | $136.00 | 1 | $136.00 |
| | 0050-1L | Dimethylformamide DMF, Reagent ACS, ≥99.8%- 1L<br>Size: 1L | $40.00 | 1 | $40.00 |

19.     On June 12, 2025, Carolina Chemical advised that MORCK attempted to purchase chemicals from them via Amazon. Carolina Chemical previously advised me that MORCK's online account was previously terminated and would not be able to order chemicals via their website. The June 12, 2025, order was cancelled and not shipped. The order is below:



20.    On June 18, 2025, I received two (2) additional order invoices shipped to MORCK from Fireworks Cookbook in Georgia, pursuant to the subpoena issued on May 1, 2025. The orders are below:

February 22, 2025, order:

## Billing Address

*Kelly Morck*
*Abalone Grow Supply, LLC*
*800 Linn St*
*Hartshorne, OK 74547*

## Shipping Address

*Kelly Morck*
*800 Linn St*
*Hartshorne, OK 74547*

## Shipping Method

*Economy (Slower)*

## Tracking Information

**USPS** - Track
*9436211105503559319480*
Shipped on February 25, 2025

| Product | Quantity | Price |
|---|---|---|
| Barium Nitrate | 2 | $13.00 |
| Hexamine | 2 | $12.00 |
| Potassium Nitrate Technical Grade Granulated | 4 | $12.00 |
| | **Subtotal:** | $37.00 |
| | **Shipping:** | $15.30 via Economy (Slower) |
| | **Payment method:** | PayPal |
| | **Total:** | $52.30 |

April 21, 2025, order:

## Billing Address

Kelly Morck
Abalone Grow Supply, LLC
800 Linn St
Hartshorne, OK 74547

## Shipping Address

Kelly Morck
800 Linn St
Hartshorne, OK 74547

## Shipping Method

Economy (Slower)

## Tracking Information

**USPS** - Track
9436211106150568882659
Shipped on April 21, 2025

| Product | Quantity | Price |
|---|---|---|
| Aluminum Atomized Spherical -325 | 1 | $8.00 |
| Dextrin | 1 | $3.00 |
| Guanidine Nitrate | 1 | $20.00 |
| Magnalium MG/AL<br>Particle Size: -325 Mesh | 1 | $14.00 |
| Potassium Nitrate Technical Grade Granulated | 2 | $6.00 |
| Potassium Perchlorate | 2 | $14.00 |
| Sodium Nitrate | 2 | $7.00 |
| Stainless Steel Scoop | 1 | $2.00 |
| | **Subtotal:** | $74.00 |
| | **Shipping:** | $17.24 via Economy (Slower) |
| | **Payment method:** | PayPal |
| | **Total:** | $91.24 |

21.    MORCK's medical records from Hillcrest Hospital in Tulsa, OK were received via a federal grand jury subpoena. The records indicated MORCK's urine screen taken on October 20, 2024, tested positive for the following: amphetamine, cocaine, cannabinoid, and fentanyl. MORCK was treated for severe burn and laceration injuries.

22.    On March 20, 2025, results were received from the Oklahoma State Bureau of Investigation (OSBI) for suspected controlled substances recovered from MORCK's residence. The following is a summary of those results:

a)  Two (2) vials containing a white powdery substance: cocaine, (Schedule II), 0.77g and 5.36g, respectively;

b)  One (1) vial of a substance: ketamine and cocaine, (Schedule II), 0.92g;

c)  One (1) vial with a crystalline substance: methamphetamine, (Schedule II), 1.47g;

d)  One (1) plastic bag containing five (5) orange tablets: methamphetamine, (Schedule II), 2.23g;

e)  One (1) plastic bag labeled "LSD" containing aluminum foil that contained two (2) small squares of paper (attached together with a perforated line): Lysergic Acid Diethylamide,(Schedule I), 6mm x 12mm;

f)  One (1) plastic bag containing a clear capsule with tan powder: 3,4-Methylenedioxymethcathinone (Methylone), (Schedule I), .041g;

g)  One (1) plastic bag containing tan powder: 3,4-Methylenedioxymethamphetamine, 2,5-dimethoxy-4-ethylphenethylamine,    3,4-Methylenedioxymethcathinone (Methylone), (All Schedule I), .025g;

h)  One (1) plastic bag containing tan powder: 3,4-Methylenedioxymethamphetamine, (Schedule I), less than 0.10g;

i)  Various Schedule III substances.

23.    Oklahoma Medical Marijuana Authority (OMMA) provided records via federal grand jury subpoena that stated MORCK was the 100% owner of Kelly's Cultivars, LLC located at 800 Linn Street, Hartshorne, OK 74547. The license expired on March 5, 2024, and was not renewed. MORCK's wife stated to law enforcement in an interview that he previously had a commercial operation involving marijuana plants.

24.    Oklahoma Bureau of Narcotics (OBN) advised that MORCK's OBN registration under Kelly's Cultivars expired on October 31, 2023, and the renewal was denied by OBN due to not obtaining a certificate of occupancy (CO) from the fire marshal. Since they did not request a hearing from OBN, the renewal application was deemed withdrawn.

25.    On January 13, 2025, a federal search warrant was issued by the Eastern District of Oklahoma to examine the contents of MORCK's cell phone seized from the explosion scene at his residence on October 20, 2024. The United States Secret Service (USSS) provided assistance with the examination of the cell phone due to its condition. USSS was able to successfully rebuild the cell phone and conduct an extraction of its contents which were provided to ATF. I requested Wagoner County Sheriff's Office digital examiner's, Joel Weber, assistance with generating a Cellebrite file, which I examined. The device was identified as a Google Pixel 6, IMEI: 355543621140847, MSISDN: 2142447109. The MSISDN is also known as the device's phone number. That same phone number is used on MORCK's chemical orders previously mentioned. I observed videos of MORCK lighting explosives in a rural area. A female is heard in the background of the videos. The following are a few of the videos observed on the cell phone showing MORCK setting off explosives:

a)  May 16, 2024, video showed MORCK lighting an explosive and a female said, "It's recording." (Video PART_1715910468955). The explosive sparked for approximately 45 seconds before a loud "boom" and explosion, sparks, and a lot of smoke appeared:

**PART_1715910468955**



**PART_1715910468955**





PART_1715910468955



July 11, 2024, video showed MORCK lighting an explosive which blew dirt out of the ground: (Video PART_1720746576959):



Video showed **MORCK** lighting a rocket and a female shouting "Do science!" on August 5, 2024. Another male is heard saying "It's still going, holy shit!"   (Video PART_1722893375240_video000000.mpeg):



Photographs taken on October 1, 2024, show a blue liquid in a container:

PART_1727831394819_image000000.jpg



Then, photographs taken on October 9, 2024, show a glass beaker, commonly used in a laboratory setting for mixing reagents, with a blue, crystalline substance: PART_1728521082563_image000000.jpg



A photo of a container of "nickel sulfate anhydrous" was also taken on October 9, 2024.

26.    On April 23, 2025, I received a laboratory report from the ATF Forensics Sciences Laboratory (ATF FSL) for evidence sent for examination. ATF FSL identified numerous explosive precursors and explosives such as Erythritol Tetranitrate (ETN) which is a homemade, secondary

high explosive; Mannitol Hexanitrate (MHN) which is a homemade, secondary high explosive; Nitrocellulose a high explosive that is also a component of some lacquers; Picric Acid which is a secondary high explosive (the picric acid in this case appears to be homemade); Lead Picrate which is a homemade, primary high explosive; Potassium Picrate which is a homemade, primary high explosive; Silver Acetylide which is a homemade, primary high explosive; Tetraamminecopper perchlorate (TACP), which is a primary high explosive, and Tetraamminecopper persulfate (TACS), which is also a primary high explosive. According to RAC Stephens, in addition to ATF FSL Chemist Steven Linehan TACP and TACS are metal complex explosives the family of which are quite extensive. The materials that MORCK ordered since the execution of the prior search warrant are chemical precursors to the generation of these types of metal complex explosives. Further, with the prior seizure of the explosives, it is apparent that MORCK has the requisite knowledge and ability to manufacture metal complex explosives. The explosives identified are listed within the List of Explosive Materials pursuant to the provisions of section 841(d) of Titel 18 U.S.C. and 27 CFR 555.

27.    On June 17, 2025, I received a preliminary determination from ATF Destructive Device Examiner Jason Snow. He stated upon review of reports, photographs, videos, and evidence examination in the case, that the data suggested at least one (1) device recovered from MORCK's residence was consistent with the characteristics of a destructive device. An official report is anticipated upon the receipt of a laboratory report confirming the presence of explosives.

28.    On June 18, 2025, I received results from the National Firearm Registration and Transfer Record (NFRTR). The report stated neither MORCK nor Copeland have any weapons, nor destructive devices registered to them. MORCK would be required to possess an active Federal Firearms License, Type 10 – Manufacturer of destructive devices, pay a Special Occupancy Tax

(SOT), and file an ATF Form 2 which would notify the ATF of the manufacture of the weapon after making it. On this same date, I caused a query of the federal explosives licensing database and found that MORCK does not possess a license to manufacture, sell, or store explosive materials and, by doing so, is in violation of Title 18 United States Code, Section 842(a)(1) and Section 842(j).

29.    Based on a review of the HME precursors seized during the October 2024 search warrant, they were shipped from Georgia, North Carolina, and Missouri, and travelled in Interstate Commerce.

30.    According to the Code of Federal Regulations Section 555.221, it states the maximum quantity of flash powder permitted in any fireworks process building is ten (10) pounds. MORCK is not a licensed fireworks manufacturer, therefore it is illegal to have that much flash powder or to have it stored the way MORCK had. According to Title 18, United States Code 842(j), "[i]t shall be unlawful for any person to store any explosive material in a manner not in conformity with regulations promulgated by the Attorney General.  In promulgating such regulations, the Attorney General shall take into consideration the class, type, and quantity of explosive materials to be stored, as well as the standards of safety and security recognized in the explosives industry."

31.    Based on my training, knowledge and experience, the components described herein meet the definition of explosive materials as defined by the federal regulations.  I also know that it is unlawful for an individual to manufacture, sell and store explosive materials without being first licensed by ATF.  On October 21, 2024, and June 18, 2025, I caused a query of the federal explosives licensing database and found that MORCK does not possess a license to manufacture,

sell, or store explosive materials and, by doing so, is in violation of Title 18 United States Code, Section 842(a)(1) and Section 842(j).

32.    This affiant sought a search warrant because I believed that MORCK caused an explosion at his residence located at 800 Linn Street, Hartshorne, Oklahoma 74547 on October 20, 2024, when he inadvertently detonated explosive chemicals. As a result of a federal search warrant for additional explosives on October 21, 2024, a large quantity of precursors and HME were located on the premises in multiple locations, as well as destructive devices. Several firearms and illegal controlled substances were found inside of the residence. MORCK has placed additional orders for HME precursors since the October 21, 2024, search warrant, with multiple orders placed as recently as June 12, 2025. The recent documented purchases from chemical companies lead me to believe that MORCK may be once again manufacturing homemade explosives and destructive devices.

33.    On June 6, 2025 Federal law enforcement agents executed a search warrant granted under 25-MJ-222-JAR on the premises located at 800 Linn Street, Hartshorne, Oklahoma 74547, searching for evidence that was the fruits, evidence, and instrumentalities of violations of Title 18 United States Code, Section, 842(a)(1), Title 18, United States Code, Section 842(j), Title 18, United States Code, Section 842(i)(3), Title 18, United States Code, Section 922(g)(3), and Title 26, United States Code, Section 5861(d).

34.    Agents located suspected marijuana and methamphetamine (which field tested positive) in the main residence. MORCK was questioned about the substances, and he admitted to smoking marijuana regularly to help him sleep and using methamphetamine to keep himself awake during working hours.

35.    Agents located various chemical precursors that are used in the manufacture of explosive/destructive devises. Further agents located an intact, suspected, destructive device (further described as an improvised shaped charge). MORCK admitted to constructing the device within the past two weeks and claimed he was going to use it to destroy a tree on his property. MORCK stated he had not detonated the device because he was fearful of an outcome similar to when he was injured by an explosion previously.

36.    Agents also located various components that can be readily assembled into a destructive/explosive device. Further agents located several homemade detonators that are explosives in themselves but can be combined with other materials to create larger explosive/destructive devices.

37.    Agents located a substance which is consistent with suspected nitrate-based explosives.

38.    Agents located a Sig Sauer pistol in the bedroom closet that MORCK shares with his wife. Upon being questioned, both MORCK and his wife stated the firearm was his wife's.

39.    MORCK did admit to detonating at least two devices which resulted in explosions within the last year.

40.    Due to the inherent danger to agents and other individuals, an emergency on site detonation of the precursors, detonators, and other materials was conducted at the residence site on June 26, 2025.

41.    Since this affidavit is being submitted for the limited purpose of enabling a judicial determination of whether probable cause exists to justify the issuance of a criminal complaint for MORCK, I have not included each and every fact known concerning this investigation to me and

others involved in this matter.  I have set forth only the facts that I believe are essential to establish the necessary foundation for a criminal complaint.

42.    Based on the above and the totality of the circumstances, I believe that probable cause exists to issue a criminal complaint against Kelly Von MORCK the following violations: Title 18, United States Code, Section 922(g)(3), for a person who is an abuser of a controlled substance to possess firearms and ammunition, Title 18, United States Code, Section 842(i)(3), for a person who is an abuser of a controlled substance to possess explosives, Title 26, United States Code, Section 5861(d), for a person to possess weapons not registered to them in the NFRTR, Title 18, United States Code, 842(j), storing explosives in a manner not in conformity with federal regulations, and Title 18, United States Code, Section 842(a)(1), for it to be unlawful for any person to engage in the business of importing, manufacturing, or dealing in explosive materials without a license issued under this chapter.

**Rebecca Davison, Special Agent**
**Bureau of Alcohol, Tobacco, Firearms and Explosives**

Sworn this 26rd day of June, 2025.

**UNITED STATES MAGISTRATE JUDGE**